SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* FERGUSON.

[No. 11,721. Filed November 14, 1923. Rehearing denied March 10, 1925. Transfer denied October 31, 1928.]

*Edmund L. Craig,* for appellant.
*George K. Denton* and *Winfield K. Denton,* for appellee.

ENLOE, P. J.—In April, 1912, Reese S. Ferguson became a member of Riverside Camp No. 97, of appellant society, which camp is located at Newburg, Indiana. Upon his being initiated into said camp, as a member of the appellant society, a benefit certificate in the sum of $1,000, payable to the appellee, the mother of said member, in the event of his death while in good standing in said society, was delivered to him. The said member was "across seas" as a soldier in the World War, returned to his home in July, 1919, and died May 9, 1920. This suit was brought by the appellee to enforce payment of said benefit certificate.

To a complaint in one paragraph, the appellant answered in four paragraphs: (1) General denial; (2) that deceased voluntarily severed his connection with appellant society in October, 1919, and thereafter paid no further dues or assessments to said society, whereby said benefit certificate became null and void and all rights thereunder lost and forfeited; (3) that the said Reese S. Ferguson failed to pay assessments in said society for the months of October, November and December, 1919, and also his "camp dues," whereby said certificate and all rights thereunder became, under the by-laws of said society, forfeited, and that said member was not thereafter reinstated; and (4), that the dues and assessments of Reese S. Ferguson, due to said society, for the months of October, November and December, 1919, were not paid by said member, nor by any one for

him; that, by reason of such failure, said certificate, and all rights thereunder, became forfeited, and that said member was not thereafter reinstated. These affirmative paragraphs of answer were met by a general denial.

There was a trial by a jury which returned a verdict for appellee in the sum of $1,084.90, for which sum judgment was duly rendered. The error assigned and presented is the overruling of appellant's motion for a new trial.

The only question presented upon this appeal which it will be necessary for us to consider is whether the trial court erred in excluding certain evidence offered by appellant.

The contention of the appellant upon the trial below was, that the assessments against the said beneficiary certificate for the months of October, November and December, 1919, had never been paid, and that, by reason thereof, under the by-laws of said society, said certificate had lapsed.

The examination of the appellee, under oath, had been taken before the trial, and her said examination read at the trial. In her examination so taken, she testified that while her said son was in the army, she attended to the paying of his assessments and dues; that her husband and another son were also members of appellant society, and that she was a member of the Woodmen Circle (the women's branch of said society); that she would pay for all four persons at the same time; that she sometimes sent the cash and sometimes paid by check; that, when she paid by check, she signed the name of her son Charles to the check; that she did not know whether she paid any assessment for her son Reese for October, 1919, or not; that she did not know whether any other person had paid said assessment; that she did not know whether any dues and assessments on the certificate of her son Reese had been paid by any person after the payment

of the assessment on said certificate for September, 1919.

The clerk of Riverside Camp, to which the deceased had belonged, had testified that no dues or assessments had been paid by Reese Ferguson, or by any one for him, after the payment of his assessment for September, 1919. The Sovereign Clerk of said society, whose headquarters was at Omaha, Nebraska, testified that the appellant is a fraternal beneficiary association; that no assessment had been received at the head office on the certificate of Reese Ferguson after the payment of the September, 1919, assessment, and that he had been suspended for failure to pay the assessment for October, 1919.

It is conceded by all parties that, under the by-laws of appellant society, a failure to pay any assessment within the time fixed by said by-laws, *ipso facto* works a suspension of the member's certificate and a forfeiture of all rights thereunder.

The clerk of said Riverside Camp, while testifying as a witness, was interrogated by counsel for appellant in reference to a certain conversation had by him with the said Reese Ferguson about the last of October, 1919, and was asked the following question:

"Q. State what happened at that time with reference to his membership in the Camp?" "A. I met Reese on the bank corner and he told me—" At this point, counsel for appellee objected to the witness answering the question; the objection was sustained and the witness not permitted to answer. A little later in his examination, he stated that he had a conversation with Reese Ferguson on the street, near the Newburgh bank, concerning Ferguson's insurance in appellant order, about the last of October, 1919, and he was then asked to detail said conversation and tell what Reese then said in reference to his insurance in said order. An objection was made to the question, and the appellant then made its offer to prove—that in said conversation said Reese

Ferguson told the witness that he could not carry his Woodmen of the World insurance and his War Risk Insurance, and that he wanted Mr. Curtis, the clerk of his camp, to whom he was talking, to drop his Woodmen of the World insurance, and said that he was not going to carry it any longer; that this conversation took place just at a time when it was necessary for him to pay the October assessment to stay in good standing. The court sustained said objection and excluded all of said offered testimony. This, the appellant urges was error.

The appellant contends that the court committed error in excluding said testimony; that the beneficiary named in said certificate had no interest therein, and that the statements of the insured, concerning said benefit certificate, he being the only person having any interest therein, were competent; and also that said statements were competent as a part of the *res gestae.*

It has been expressly held in this state that the beneficiary named in a certificate of insurance, in a fraternal insurance society, where, as in the instant case, the insured has the right to change the beneficiary at any time, has no vested right to the benefits which are to accrue upon the death of the insured until the death of the member occurs, *Masonic, etc., Society* v. *Burkhart* (1887), 110 Ind. 189. Many of the authorities draw a distinction between a "benefit certificate," such as the one here in question, and a "policy" of insurance in an old line company, and while the weight of authority undoubtedly is, that, as to "benefit certificates," the declarations of the insured concerning said certificate, and matters connected therewith, are admissible in evidence as against the named beneficiary, or the personal representative of the insured, (*Conclave* v. *O'Connell* [1899], 107 Ga. 97, 32 S. E. 946; *Van Frank* v. *United States Ben. Assn.* [1895], 158 Ill. 560, 41 N. E. 1005; *Callies* v. *Modern Woodmen* [1903], 98 Mo. App. 521, 72

S. W. 713; *Steinhausen* v. *Preferred Mut., etc., Assn.* [1891], 59 Hun. 336, 13 N. Y. Supp. 36; *Life Association* v. *Winn* [1896], 96 Tenn. 224, 33 S. W. 1045; *Thomas* v. *Grand Lodge A. O. U. W.* [1895], 12 Wash. 500, 41 Pac. 882; *Lundholm* v. *Mystic Workers* [1911], 164 Ill. App. 472). In this state, it has been expressly held, *Supreme Lodge, etc.,* v. *Schmidt* (1884), 98 Ind. 374, that such statements of the insured, unless a part of the *res gestae,* are not competent as against the named beneficiary. It, therefore, remains for us to determine whether such offered evidence was admissible as part of the *res gestae.*

*Res gestae* has been defined as "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not properly be understood," 10 R. C. L. 974. The material inquiry always is, "whether the statements offered as evidence were made at a time and under such circumstances as to induce the belief that they were not the result of reflection or premeditation." *Britton* v. *Washington Power Co.* (1910), 59 Wash. 440, 110 Pac. 20, 33 L. R. A. (N. S.) 109, 140 Am. St. 858. Keeping these rules in mind, we shall now examine the offered evidence.

The assessment levied against the certificate of the insured for the month of October, 1919, was payable at the time the conversation referred to took place— it was due from the insured to the appellant society, if he desired that his certificate remain in force, and he knew that, by his failure to pay, his certificate would lapse, and become of no value. When asked about paying this assessment, he declined to pay it; he not only declined to pay said assessment, but he made a statement explanatory of his act in declining to pay—that he could not carry both his Woodmen insur-

ance and his policy of War Risk insurance, and he preferred to carry the War Risk. The statement then and there made was clearly explanatory of his conduct—his refusal to pay—and was a part of the *res gestae*. This testimony should have been admitted.

For the error noted, the cause is reversed, with directions to sustain appellant's motion for a new trial, and for further proceedings.